UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDWARD BANKS,

                           Plaintiff,

              -against-

MCGLYNN, HAYS & CO., INC., et al.,

                           Defendants.

1:19-cv-05727 (JLR) (RWL)

1:21-cv-00679 (JLR) (RWL)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Edward Banks ("Banks" or "Plaintiff") brings two consolidated actions against his former employer, McGlynn, Hays & Co., Inc. ("McGlynn"), as well as against several employees of McGlynn: Gerard Carlucci ("Carlucci"), Jack Robinson ("Robinson"), Christopher Sullivan ("Sullivan"), Ciro Donniacuo ("Donniacuo"), and Joseph I. Crincoli ("Crincoli" and, collectively, "Defendants"). Each of the two consolidated actions involves the same parties. The lead case is *Banks v. McGlynn, Hays & Co., Inc. et al.*, No. 1:19-cv-05727 (JLR) (the "Lead Case"); references to "ECF" refer to entries on this docket. The member case is *Banks v. McGlynn, Hays & Co., Inc. et al.*, No. 21-cv-00679 (JLR) (the "Member Case"); references to "Member ECF" refer to entries on this docket. Plaintiff alleges that Defendants discriminated against him, subjected him to a hostile work environment, and retaliated against him, including by terminating his employment. Defendants and Plaintiff have cross-moved for summary judgment.

For the reasons stated below, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion is therefore DENIED.

# BACKGROUND

## I.   The Parties

Banks is an African American man.  Am. Compl. ¶ 40.  Banks was hired by McGlynn in August 2016 and was employed there until early 2018.  *Id.* ¶¶ 42-43; ECF No. 403-1 ("Robinson Tr.") at 212:7-8; ECF No. 121-3 ¶ 14.  Carlucci is the president of McGlynn.  ECF No. 403-2 ("Carlucci Tr.") at 28:9.  Robinson was a shop foreman at McGlynn.  Carlucci Tr. at 65:13-17.  Sullivan was a supervisor at McGlynn.  ECF No. 403-03 ("Sullivan Tr.") at 57:7-14.  Donniacuo was employed as a "helper" at McGlynn.  ECF No. 403-4 ("Donniacuo Tr.").  Crincoli ran the Philadelphia branch of McGlynn and also acted as the "unofficial[] HR . . . person" for McGlynn.  ECF No. 403-5 ("Crincoli Tr.") at 43:14, 47:9-12.

## II.   Key Factual Events

### A.   Alleged Discrimination

Filtering through all of the extraneous information cluttering the summary-judgment papers, the Court will endeavor to set forth the factual points and evidence upon which Plaintiff relies in bringing his discrimination and retaliation claims with factual inferences drawn in the light most favorable to Plaintiff.[1]

---

[1] The briefing in this matter by both parties did not meet the level expected by this Court.  Federal Rule of Civil Procedure 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."  *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  It is instead the parties' responsibility to "point out" contested facts for the Court, and to "clarify the elements of the substantive law which remain at issue because they turn on contested facts."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (citation omitted); *see* Local Civ. R. 56.1(d) (statements controverting any statement of material fact must be followed by citation to admissible evidence); *Asset Co IM Rest, LLC v. Katzoff*, No. 23-cv-09691 (JPC), 2024 WL 167333, at *15 n.11 (S.D.N.Y. Jan. 16, 2024) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).

In support of his claims, Plaintiff primarily relies on several comments by Donniacuo, a helper at McGlynn, after Plaintiff began working at McGlynn in 2016.  Donniacuo was Plaintiff's colleague, and Plaintiff has not adequately refuted the evidence in the record showing that Donniacuo did not have supervisory authority over Plaintiff.  Donniacuo Tr. at 108:3-18, 264:21-24; *see also* ECF No. 398 ("Banks's 56.1 Opp.") ¶ 24; *Jessamy v. Jakasal*, No. 21-0214, 2022 WL 1669512, at *3 (2d Cir. May 26, 2022) (summary order) (conclusory allegations insufficient to create issue of fact on summary judgment because no evidence was provided in support of contention).

The parties dispute whether, in late 2016, Donniacuo, called Banks a "rigger."  Plaintiff alleges that he did and that this meant the n-word,[2] Am. Compl. ¶ 50, but he does not provide any evidence to support this allegation, *see* ECF No. 389 ("Banks's 56.1 Statement") ¶ 40 (Plaintiff stating that "Mr. Donniacuo denied calling Mr. Banks 'Rigger'; however, he was aware that Mr. Banks claimed that Mr. Donniacuo called him 'Rigger.'").  Donniacuo denies making the statement at all, let alone that it would have meant the n-word, noting that people working at McGlynn conducted "rigging" and that he's seen Plaintiff "rigging stuff."  Donniacuo Tr. at 231:8-234:1. Indeed, the parties do not dispute that "rigging" was a regular activity that McGlynn employees performed.  Robinson Tr. at 164:6-8; Banks's 56.1 Statement ¶ 41 (Plaintiff's

---

In many instances, the parties did not abide by their responsibilities.  Counsel for Defendants often did not provide the Court with particularized citations to the record, instead citing entire deposition transcripts and other evidence without specificity.  The Court also identified several instances throughout Plaintiff's papers where he did not provide any evidence in support of a contention, or his assertions were flatly contradicted and/or wholly unsupported by the record citations provided.

[2] In light of the uniquely "odious" and "violent" nature of this slur, *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 86 n.3 (2d Cir. 2021) (Lohier, J., dissenting), the Court declines to repeat it in this opinion.

statement of facts stating that "'Rigging' is securing a heavy object with rope so that it can be lifted and placed where it is needed to be.").  The Court will refer to this alleged event as the "rigger remark."

Plaintiff cites to another instance on May 8, 2017, when Donniacuo sent Banks a text message that stated: "Thank my N."  ECF No. 387-9.  Plaintiff alleged that this text message meant "Thank my [n-word]," Am. Compl. ¶ 69, but does not cite to any deposition testimony, documents, affidavits, or other evidence that supports his interpretation, *see* Banks's 56.1 Statement ¶ 30 (citing wholly inapposite and unsupportive testimony for the proposition that Donniacuo "admitted that [the text message] meant [n-word]").  Plaintiff did not even submit his own testimony, via deposition or declaration, stating that he interpreted this text message in this manner.  Instead, the record reflects Donniacuo's unrebutted testimony that this was a typo and he intended to type "thank you, my man," Donniacuo Tr. at 118:10-119:1, because Banks "did [him] a favor that day" and "was very helpful to [him]," *id.* at 120:21-23.  The Court will refer to this event as the "text message."

Next, Plaintiff points to a May 2017 video recording where Banks recorded him and Donniacuo driving in one of McGlynn's work vehicles, while rhythm and blues music played on the radio.  *See id.* at 280:21-25, 281:11-24; *id.* at 274:16-275:23.  Donniacuo stated "this is black music," "don't get more black than this," "this is old school black," and "this is Steve Harvey [black]."  *Id.* at 143:15-16; *see* Member ECF No. 134 ("Banks Opp.") at 12-13.  The Court refers to this event as the "music event."

In fall 2017, Donniacuo saw a car outside the McGlynn workshop and it is undisputed that Donniacuo asked Banks, "Eddie, is this your [n-word] car?"  Donniacuo Tr. at 31:1-3; Crincoli Tr. at 60:5-25.  The Court will refer to this event as the "car comment."  After Banks complained

about this incident, Carlucci, the president of McGlynn, became aware of the car comment, Carlucci Tr. at 63:8-14, 278:9-21, as did Crincoli, the "unofficial[] . . . HR person for McGlynn," *id.* at 27:23-28:5, 47:9-12.  Donniacuo apologized and was suspended for approximately one work-week for the comment.  *Id.* at 59:6-22, 61:5-11; Donniacuo Tr. at 31:22, 34:3-4, 46:12-25.  After that incident, Donniacuo stated in a loud tone that Banks "didn't have to go to Gerard [Carlucci]."  Donniacuo Tr. at 150:8-20.  Donniacuo subsequently tried to "distance" himself from Banks.  *Id.* at 307:4-6.

On September 25, 2017, Banks recorded a conversation with Sullivan, a supervisor at McGlynn, wherein Sullivan told Banks to "keep your mouth quiet," "[t]he best thing to do is be silent sometimes, and walk away from the problems," that Banks was "stepping into [a] bear trap," and "[t]hey want you to do this."  ECF No. 387-10 at 3-4.  Plaintiff cites this conversation as an indication that McGlynn was trying to keep him from complaining about mistreatment whereas Defendants characterize this conversation as an attempt to help Plaintiff acclimate to the workplace.  *See* Banks Opp. at 13; Member ECF No. 126 ("Def. Br.") at 4-5.  The Court refers to this event as the "Sullivan conversation."

The parties appear to dispute whether, sometime before October 2017, Banks accused Robinson, a shop foreman at McGlynn, of using the n-word.  Robinson Tr. at 126:11-127:13, 131:7-132:8, 132:15-23, 142:2-144:3, 147:21-152:12.  Robinson testified that he never used the n-word, but that Banks falsely told other Black employees at McGlynn that Robinson had.  *Id.* at 142:2-144:3.  Banks disavows ever accusing Robinson of using the n-word.  *See* Banks's 56.1 Opp. at 6 ("The attorney letter that was emailed to Mr. Carlucci during Mr. Banks' employment . . . did not claim that Mr. Robinson had somehow called Mr. Banks a [n-word]."); *id.* ("None of the Complaints that Mr. Banks filed with the Court ever alleged that Mr. Robinson

somehow called Mr. Banks a [n-word].”); *id.* (“Mr. Banks told Mr. Robinson during his employment that he was complaining that Mr. Donniacuo called him [n-word], not Mr. Robinson, but Mr. Robinson would not believe him.”).  Robinson testified that, after this incident, he complained to Carlucci that Banks was sowing discontent in the workplace.  Robinson Tr. at 415:1-420:13.

### B. The October 2017 Letter

On October 5, 2017, counsel for Banks sent a letter to Carlucci, stating that McGlynn was “discriminating against, harassing and retaliating against him because of his race, ethnicity, national origin and legally protected complaints.”  ECF No. 387-12 (“10/5/2017 Ltr.”) at 2.  As evidence of discrimination and harassment, the letter referenced the rigger remark, the text message, the music event, and the car comment, and also alleged that Donniacuo, Sullivan, and Robinson retaliated against Banks, including during the Sullivan conversation.  *Id.* at 2-3.

Crincoli responded to the letter by email on October 9, 2017.  *Id.* at 4.  Crincoli identified himself as “Vice President and Director of Human Resources at McGlynn” and stated that he would schedule interviews with employees to investigate the issue and would plan diversity training.  *Id.*  Crincoli testified that, although he had previously investigated Donniacuo’s car comment, he did not conduct any further investigations based on the October 5, 2017 letter from Banks’s attorney.  Crincoli Tr. at 338:4-21; *see also id.* at 27:17-22, 28:6-11.

### C. Plaintiff’s Performance at Work

Defendants have provided evidence about deficiencies in Plaintiff’s performance at work. For example, Joann Thomas, a former McGlynn employee with an administrative role, testified

that she saw "firsthand" Banks "being insubordinate."  ECF No. 403-6 ("Thomas Tr.") at Day 2[3]

14:18-19; *see* Am. Compl. ¶ 116 (identifying Thomas as a "secretary").  For example, Thomas

testified that she would regularly see Banks "coming up the block with some food and something

to drink . . . after check-in time, before lunch.  There were times where he'd be across the street

socializing either with the lumber guys or the pretzel guys across the street, to the left or the right.

There were times where he would be sleeping up in the back room downstairs.  So I knew that

[Banks] was insubordinate."  Thomas Tr. at Day 2 15:1-10.  Thomas testified that other people on

the job also took breaks, but that those people would have "let somebody else know where [they]

were going and how long [they] would be," and that they were "[n]ot sleeping," on breaks, unlike

Banks.  *Id.* at 15:25-16:18.  Thomas also testified that she "caught [Banks] sleeping in the back

room a couple of times" and recalled that she had informed her superiors, including Carlucci, that

Banks was regularly sleeping on the job.  *Id.* at 67:4-68:24 (Thomas testifying that "[i]t was a

habit, it was habitual" that she could not find Banks because he would be asleep or on a break

when he should have been working); *id.* at 69:3-25 ("I recall one day specifically that . . . I

couldn't find him.  And . . . I walked out of the shop, and he was coming up the block eating

breakfast and having a drink.  And this was – the hours were in between check-in and lunch, it

wasn't break time."); *id.* at 107:2-109:14; *see also* Sullivan Tr. at 214:25-215:8 (Sullivan

testifying that he "witnessed . . . [Banks] not being at his work station or in the shop.  I witnessed

[on] other occasion[s] him just roaming around the building, roaming on the second floor, . . . not

keeping a work area clean and safe.").  Plaintiff has not provided any testimony refuting this

evidence in the record.

---

[3] The Court notes that the Thomas deposition took place over multiple days, and the transcripts
were submitted to the Court as one document with overlapping page numbers.

In December 2017, Banks received a disciplinary write-up from Carlucci.  ECF No. 387-13.  The document states that it was for "Insubordination" but does not include details, *id.*, and no witness provided testimony of any detail regarding the write-up.

**D.  Plaintiff's Altercation with Robinson and Termination**

In early 2018, Robinson saw an Instagram photo that depicted the McGlynn work area, and worried that there was a safety issue.  Robinson Tr. at 300:19-302:5, 384:12-18.  Robinson returned to the shop and confronted Banks about the conditions of the shop, as depicted by the photo on Instagram.  *Id.* at 305:15-306:2.  Robinson testified that he showed Banks the photo of the unsafe condition, and that Banks then called Robinson "a diabetic pussy" and said "let's go outside, you diabetic pussy.  Not in [a] joking around [tone], in an angry tone to – you know, to perform bodily harm."  *Id.* at 305:17-306:2.  Robinson further testified that Banks said "fuck you.  Fuck you, you diabetic pussy.  Let's go outside, you diabetic pussy.  You fucking piece of shit.  Fuck you," to which Robinson replied, "do you think I'm really going to hit you?  I'm like, you're after a lawsuit.  Do you think I'm going to hit you?"  *Id.* at 313:4-14.  Robinson testified that Banks responded, "I'll never hit you.  You don't have enough money."  *Id.* at 313:12-14; *see* ECF No. 387-6 (Crincoli's incident notes).  Eventually, Robinson stepped away and went to Carlucci's office, and told Carlucci that he could not "work in the shop like this any more."  Robinson Tr. at 313:25-314:1.  Carlucci then informed Robinson that both he and Banks would be written up for the altercation.  *Id.* at 314:5-6.

Banks was subsequently suspended from McGlynn and ultimately fired.[4]  ECF No. 387-6 at 1.

---

[4] Carlucci testified that Banks was not "fired" but rather that he "left" McGlynn.  Carlucci Tr. at 60:23-61:10.  For purposes of this motion, the Court assumes that Banks was fired from McGlynn.

### III.   Procedural History

The procedural history of this case is unfortunately lengthy, primarily due to unnecessary quarrelling between the attorneys on both sides of the case.  The Court confines its discussion of the procedural history to the key events and otherwise assumes the parties' familiarity with the case.

On June 19, 2019, Plaintiff commenced the Lead Case.  ECF No. 1 ("Compl.").  In the Lead Case, Plaintiff brought causes of action for race/color/ethnicity discrimination and retaliation under 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. ("the NYCHRL").  Compl. ¶¶ 160-241.

On January 25, 2021, Plaintiff commenced the Member Case.  On June 21, 2021, Plaintiff filed the operative complaint in the Member Case.  Am. Compl.  In the Member Case, Plaintiff added allegations and causes of action for discrimination and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA"), as well as disability/medical-leave discrimination and retaliation under both the NYSHRL and the NYCHRL.  *See* Am. Compl. ¶¶ 260-283, 339-363, 392-413.

On March 22, 2022, the Court dismissed Plaintiff's claims brought under the FMLA in the Member Case.  Member ECF No. 26 at 4-5.  At the same time, the Court declined to dismiss Plaintiff's other claims in the Member Case as duplicative of his claims in Plaintiff's Lead Case "contingent on a motion from Banks to consolidate [the Member Case] with his prior action."  *Id.* at 5-6.  On April 5, 2022, the Member Case was consolidated with the Lead Case.  Member ECF

No. 31.  The consolidated action was reassigned to the undersigned on September 20, 2022.

Member ECF No. 95; ECF No. 362.

Following the resolution of Defendants' motion to dismiss and consolidation of the

Member Case and the Lead Case, Plaintiff's remaining claims are for race/color/ethnicity

discrimination and retaliation under Section 1981, Am. Compl. ¶¶ 284-306, the NYSHRL, *id.*

¶¶ 307-338, and the NYCHRL, *id.* ¶¶ 364-391, as well as disability/medical-leave discrimination

and retaliation under the NYSHRL, *id.* ¶¶ 339-363, and the NYCHRL, *id.* ¶¶ 392-413.

On March 21, 2023, Defendants filed a motion for summary judgment.  Member ECF

No. 121.  On March 22, 2023, Plaintiff filed a cross-motion for partial summary judgment.  ECF

No. 386 ("Banks Br.").  On March 23, 2023, Defendants filed a corrected brief in support of their

motion.  Def. Br.  On April 4, 2023, Defendants opposed Plaintiff's motion.  ECF No. 397 ("Def.

Opp.").  On April 5, 2023, Plaintiff opposed Defendants' motion.  Banks Opp.  On April 11,

2023, Defendants filed a reply in support of their motion.  ECF No. 401 ("Def. Reply"); *see also*

Member ECF No. 136.  On April 12, 2023, Plaintiff filed a reply in support of his motion.  ECF

No. 402 ("Banks Reply").  The motions are now fully briefed and presently before the Court.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, a moving party is entitled to summary

judgment if, on any claim or defense, that party "shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A

"genuine" dispute is one in which "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

fact is "material" only if it "might affect the outcome of the suit under the governing law."  *Id*.

At summary judgment, the Court's task is simply to "discern[] whether there are any

genuine issues of material fact to be tried, not to decid[e] them."  *Gallo v. Prudential Residential*

*Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Therefore, "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997); *accord Rupp v. City of Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024).  The Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

Where, as here, there are cross-motions for summary judgment, the Court examines each party's motion on its own merits and draws all reasonable inferences in favor of the non-movant. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).  For purposes of summary-judgment motions, genuine factual disputes are "not created by a mere allegation in the pleadings, nor by surmise or conjecture."  *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010) (citation omitted).  In reviewing a motion for summary judgment, the Court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (ellipses and citation omitted).

## DISCUSSION[5]

Following the Court's previous dismissal of Plaintiff's FMLA claims, there are only two federal causes of action remaining in this case: one for discrimination and a second for retaliation,

---

[5] As a threshold matter, to the extent that Plaintiff argues that the Court should deny summary judgment because "more information may be required," Banks Opp. at 24-25, the Court overrules that objection.  Magistrate Judge Lehrburger has already denied Plaintiff's request in this case to "compel Defendants to continue Plaintiff's deposition."  ECF No. 109.  He noted, and this Court agrees, that "[i]f Plaintiff wants to have his own deposition taken by his own counsel, then Plaintiff shall be responsible for noticing and paying for it."  *Id.*  Moreover, Plaintiff could have

both brought under Section 1981.  As to the former, it is unclear to the Court whether Plaintiff

asserts a discrimination claim, a hostile-work-environment claim, or both.  Plaintiff styles the

third cause of action in his Amended Complaint as "race/color/ethnicity discrimination under

Section 1981" and alleges that Defendants "subjected Plaintiff to unlawful activities, with

misconduct" and that his "work environment was hostile or abusive."  Am. Compl. ¶¶ 284-294

(capitalization omitted).  Defendants construe this cause of action as a discrimination claim in

their motion for summary judgment.  *See* Def. Br. at 15 ("Banks' federal claims allege that

McGlynn and certain of its employees had discriminated against him because of his race.").  In

his opposition brief, however, Plaintiff argues both that "Defendants have not credibly contested

essential facts establishing hostile work environment," Banks Opp. at 11 (further capitalization

omitted), and that "discrimination and hostile work environment causes of action are both

established," because a reasonable jury could find that Banks was subject to adverse employment

actions, *id.* at 17-18.  The Court therefore assumes for the purpose of this motion that Plaintiff has

brought claims for race/color/ethnicity discrimination, hostile work environment, and retaliation

under Section 1981.  The Court examines these federal claims first.

## I.   Hostile Work Environment

To establish a hostile work environment under Section 1981, the plaintiff must show that

"the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment."  *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir.

2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Banks v. Gen.*

---

(and in fact did) submit his own affidavit in opposition to Defendants' motion for summary
judgment.  ECF No. 400-12.  If Plaintiff wished to submit any further evidence, he had ample
opportunity to provide it to the Court and failed to do so.

*Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014); *see Stanley v. Mount Sinai Health Sys., Inc.*, No. 21-cv-04619 (VEC), 2023 WL 8355393, at *6 (S.D.N.Y. Dec. 1, 2023) (hostile-work-environment claims brought under Section 1981 are analyzed under the same standard as those brought under Title VII).

"As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "Thus, while a single incident can suffice to substantiate a hostile work environment claim, such an incident, to qualify, must be 'extraordinarily severe.'" *Stanley*, 2023 WL 8355393, at *7 (quoting *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013)); *accord Gen. Motors*, 81 F.4th at 262. "Courts must distinguish between merely offensive and boorish conduct and conduct that is sufficient severe or pervasive as to alter the conditions of employment, based on factors like the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Cunningham v. N.Y. Junior Tennis League, Inc.*, No. 18-cv-01743 (JMF), 2020 WL 916964, at *5 (S.D.N.Y. Feb. 26, 2020) (brackets, quotation marks, and citations omitted).

Plaintiff points to the text message, the music event, and the car comment as undisputed evidence that "Mr. Banks suffered a hostile and abusive work environment." Banks Opp. at 1, 11-13. However, even viewed in the light most favorable to the Plaintiff, and even considering

the rigger comment as well, Plaintiff fails to prove behavior "so extraordinarily severe to have altered the conditions of his working environment." *Cunningham*, 2020 WL 916964, at *6 (brackets, ellipsis, and citation omitted).  Plaintiff has not presented any evidence that he was actually called a "rigger," let alone in a way that meant the "n-word" as opposed to the word being used as a description of the jobs of riggers at McGlynn.  Nor has Plaintiff provided any evidence to refute Donniacuo's testimony that his "Thank my N" text to Plaintiff meant "Thank my [ma]N" and that he mistyped it, rather than "Thank my [n-word]."  Indeed, Plaintiff has not even provided testimony or a declaration that he interpreted the text in such a manner.  In contrast, Donniacuo's undisputed statement calling a car a "[n-word] car" was wholly unacceptable, and his comment about how certain music was "Black" music was not appropriate workplace conversation.  But these comments made by Donniacuo – a low-level, non-supervisory coworker – are not sufficiently severe or pervasive to cause a hostile environment.  *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709, 713 (2d Cir. 1998) (even if plaintiff's supervisors made "several discriminatory remarks about minorities," those comments, while "despicable and offensive, . . . fail[ed] to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment").[6]

       Other courts have held likewise.  For example, in *Stanley*, it was "undisputed that, on at most two occasions, [Defendant] used the phrase 'angry Black woman' when discussing [the

---

[6] Plaintiff's remaining (and poorly supported) allegations that he was occasionally restricted from areas of the McGlynn shop, not permitted as many work breaks as others, and was disciplined due to his attendance record, Banks Opp. at 14-15, are not tied to his race and "are, as a whole, the sort of 'run-of-the-mill workplace conflicts' that simply 'do not rise to the level of an objectively hostile workplace.'"  *Stanley*, 2023 WL 8355393, at *8 (quoting *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019) (summary order)); *see also Littlejohn*, 795 F.3d at 321 (allegations such as additional work, changes in schedule, exclusion from meetings, and wrongful reprimands were insufficient to establish a hostile work environment).

plaintiff's] demeanor at work" and that the defendant also made at least one more remark to the plaintiff with a "racial undertone[]."  2023 WL 8355393, at *7.  The court held that these isolated incidents, although inappropriate, were not objectively "severe or pervasive" and therefore could not establish a *prima facie* case of a hostile work environment under Section 1981.  *Id.* at *8; *see Obi v. Westchester Med. Reg'l Physician Servs., P.C.*, No. 19-cv-03022 (VB), 2020 WL 1434159, at *8 (S.D.N.Y. Mar. 23, 2020) (comments that occurred "over the course of almost two years" that plaintiff, "as a 'black African,' . . . should go back to her 'poor country'" were "episodic and not 'sufficiently continuous and concerted in order to be deemed pervasive.'" (quoting *Raspardo*, 770 F.3d at 114)).  The *Stanley* court further held that "[e]ven when considering the incidents cumulatively . . . [plaintiff] has failed to establish a prima facie case of a hostile work environment based on race."  2020 WL 1434159, at *8.

Indeed, courts in this District regularly dismiss, before discovery, allegations of conduct even more severe than that which occurred here.  In *Small v. New York City Department of Education*, 650 F. Supp. 3d 89, 101 (S.D.N.Y. 2023), for example, the plaintiff, a teacher for the New York City Department of Education, alleged, among other things, that his principal yelled at him in front of others, undermined his disciplinary decisions, questioned parents about the plaintiff's sexuality and stated that she did not like him because he is gay, placed him on a teacher improvement plan, subjected him to a coercive investigation, required his class to be observed by a colleague, and ultimately terminated him.  The court concluded that the plaintiff's allegations did "not amount to conduct so severe or pervasive that they state a plausible hostile work environment claim."  *Id.*

Here, too, viewing all of the alleged conduct as a whole, in the light most favorable to Plaintiff, Plaintiff has not shown a hostile environment claim under Section 1981 as a matter of

law.  *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (describing as "quite minor" plaintiff's allegations that defendants "wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Garcia v. N.Y.C. Health & Hosps. Corp.*, No. 19-cv-00997 (PAE), 2019 WL 6878729, at *7 (S.D.N.Y. Dec. 17, 2019) (no hostile work environment where the plaintiff's supervisor publicly questioned plaintiff about his disability, yelled at or was aggressive towards him on four occasions, and referred to the plaintiff as a "faggot" in another language); *Davis-Molina v. Port Auth. of N.Y. & N.J.,* No. 08-cv-07586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (no hostile work environment despite the employer yelling at and talking down to the plaintiff in front of staff, excluding the plaintiff from meetings, questioning overtime hours, avoiding the plaintiff, speaking rudely, diminishing job responsibilities, and more), *aff'd*, 488 F. App'x. 530 (2d Cir. 2012) (summary order); *Liburd v. Bronx Leb. Hosp. Ctr.*, No. 07-cv-11316 (HB), 2009 WL 900739, at *1, 8 (S.D.N.Y. Apr. 3, 2009) (no hostile work environment where plaintiff alleged that supervisor ignored and spoke to her harshly at meetings, scolded her for not following the chain of command in seeking consent to attend a conference, threatened to transfer her to another department, denied a transfer to the supervisor of her choice, gave her extra duties, stripped her of other duties, referred to her as "black ass" on three occasions, closely monitored her, gave unrealistic time periods to complete tasks, eliminated programs that the plaintiff had implemented, and ultimately terminated plaintiff and replaced her with a white female), *aff'd*, 372 F. App'x 137, 139-40 (2d Cir. 2010) (summary order).

 The Court in no way condones using the n-word in the workplace, even once, to describe a car or otherwise.  Nevertheless, on the evidence presented here, no reasonable juror could find

that Defendants subjected Plaintiff to a severe and pervasive hostile work environment under Section 1981.  Therefore, the Court grants summary judgment to Defendants as to Banks's hostile-work-environment claim under Section 1981.

## II.   Discrimination

Plaintiff's claim of race/color/ethnicity discrimination under Section 1981 is analyzed under the well-known burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Stewart v. City of New York*, No. 22-2775, 2023 WL 6970127, at *1 (2d Cir. Oct. 23, 2023) (applying *McDonnell Douglas* framework to Section 1981 discrimination claim).  To make out a *prima facie* case of discrimination under this framework, the plaintiff has the burden of establishing, among other things, that he was subjected to an adverse employment action under circumstances giving rise to an inference of discrimination.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."  *Id.* at 85.  After a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *See id.* at 83.  If the employer articulates such a reason for its action, the burden then shifts back to the plaintiff to show that the employer's reason was pretext for discrimination.  *See id.*  If the plaintiff cannot show that the employer's reason was pretextual and "point to evidence that reasonably supports a finding of prohibited discrimination," the employer is entitled to summary judgment.  *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000); *see also Stewart*, 2023 WL 6970127, at *1.

Plaintiff's claims fall short.  Plaintiff argues that "a reasonable jury could find that barring Banks from the second-floor office, no longer allowing him work and meal breaks, giving him a disciplinary write-up . . . as well as suspending and firing him constitute materially adverse

17

changes in the terms and conditions of employment" under circumstances that give rise to an inference of discrimination. Banks Opp. at 17 (brackets, quotation marks, and citation omitted).

As a threshold matter, Plaintiff fails to cite to any evidence that he was unfairly barred from a portion of the office where he needed to be and was not allowed work and meal breaks. *See id.* (failing to cite to a portion of the record that supports this argument); *see generally* Banks's 56.1 Opp. (Plaintiff's response to Defendants' Rule 56.1 statement, notably not citing to any portion of the record for the proposition that Banks was barred from any portion of the office and not allowed work and meal breaks).

Even if Banks were barred from the second-floor office, not allowed the same work and meal breaks, and issued a disciplinary write-up, those acts do not amount to adverse employment actions. See ECF No. 64 ¶¶ 47, 49 (Defendants' answer to the complaint in the Lead Case, stating that "if [Banks] was not permitted to have a break it was to make up for plaintiff's spotty attendance" and pleading that a directive barring Plaintiff from a portion of the office at certain times "was implemented to prevent the . . . plaintiff from wasting time on the second floor."). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 85 (citation omitted). For example, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities" are adverse employment actions. *Id.* (citation omitted); *see also Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001) (negative write-up without material alteration of working conditions is not actionable employment action), *aff'd*, 51 Fed. App'x 55 (2d Cir. 2002) (summary order). Therefore, the only adverse employment actions at issue here were Plaintiff's suspension and subsequent termination.

Plaintiff has not shown that his suspension and termination were rendered under circumstances giving rise to an inference of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  As an initial matter, Plaintiff does not contest that Carlucci hired Banks, Carlucci Tr. at 33:9-12, and that Carlucci "was the only one that could fire somebody during Mr. Banks's employment," Banks's 56.1 Statement ¶ 4 (quotation marks and citation omitted).  Courts in this Circuit regularly find that an adverse employment action by the same person who hired the employee, without more, does not support an inference of discrimination.  *See, e.g.*, *Cunningham*, 2020 WL 916964, at *4; *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.").

But more to the point, the adverse employment actions of which Banks complains do not give rise to an inference of discrimination because there is no evidence that Carlucci, the ultimate decision-maker as to Banks's employment status at McGlynn, ever made any discriminatory remarks or took any discriminatory actions against Banks.  The Court cannot say that stray offensive comments made much earlier by Donniacuo, who was clearly not the decision-maker with respect to any purported adverse employment actions, could possibly give rise to the inference that the actions of Carlucci on behalf of McGlynn were motivated by discriminatory animus.[7]

---

[7] To the extent Plaintiff argues that discriminatory animus can be imputed to Carlucci on the basis of a cat's paw theory, his argument fails.  *See* Banks Opp. at 19-20.  The cat's paw metaphor "refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action."  *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d

Even if Plaintiff had successfully established a *prima facie* case of discrimination, his claim fails at the third step of the *McDonnell Douglas* analysis because there is no evidence from which a jury could find that Defendants' non-discriminatory reasons for his termination are a pretext for discrimination.  At a minimum, and as explained above, Defendants have presented unrebutted evidence that Banks slept on the job, was not where he needed to be during his working hours, and was involved in a near-physical altercation with a co-worker that he called a "diabetic pussy."  Soon after the altercation and name-calling event in early 2018, and months after any of the unfortunate comments made by Donniacuo, Banks was suspended and then fired by Carlucci.  Under these circumstances, Plaintiff fails to produce "sufficient evidence to support a rational finding" that Defendants' stated reasons for the adverse employment actions "were false, and that more likely than not [discrimination] was the real reason" for the adverse employment actions.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted); *see, e.g.*, *Richardson v. Comm'n on Hum. Rts. & Opportunities*, 532 F.3d 114, 125 (2d Cir. 2008) ("[W]here there is overwhelming evidence that the employer had a legitimate reason to dismiss an employee, the employee must present more than few isolated pieces of contrary evidence to survive summary judgment." (citation omitted)).  Plaintiff has not put forth sufficient evidence such that a reasonable factfinder could conclude that the reasons he was subjected to the adverse employment actions were pretextual.

Therefore, the Court grants summary judgment to Defendants on Banks's claim for race/color/ethnicity discrimination under Section 1981.

---

Cir. 2016) (citation omitted).  Here, Plaintiff does not cite to evidence that would allow a reasonable jury to find discrimination based on a cat's paw theory.

### III.  Retaliation

Plaintiff next alleges that he was retaliated against for engaging in protected activity under Section 1981.  *See* Am. Compl. ¶¶ 295-306.  Specifically, Banks alleges that after he complained to Carlucci and his attorney sent McGlynn the October 5, 2017 letter referencing the rigger remark, the text message, the music event, and the car comment, McGlynn retaliated against him when Sullivan told him to keep quiet and when Carlucci fired him.  Banks Opp. at 2.

Retaliation claims under Section 1981 are also analyzed pursuant to the *McDonnell-Douglas* burden-shifting evidentiary framework.  *Littlejohn*, 795 F.3d at 315.  "To make out a prima facie case of unlawful retaliation under [Section 1981], a plaintiff must show: (1) participation in a protected activity; (2) that the employer knew of plaintiff's participation in that protected activity; (3) that plaintiff suffered an adverse employment action; and (4) that there exists a causal relationship between the protected activity and the adverse employment action."  *Stewart*, 2023 WL 6970127, at *2 (original brackets, quotation marks, and citation omitted)); *see Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (applying same framework to Section 1981 retaliation claim).  "The plaintiff's burden in this regard is '*de minimis,*' and 'the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive."  *Hicks*, 593 F.3d at 164 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

Once a plaintiff fulfills this burden, a presumption of retaliation arises, and the defendant "must then articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Id.* (quotation marks and citation omitted).  If the defendant succeeds and rebuts the initial presumption, then the plaintiff "must show that retaliation was a substantial reason for the adverse

employment action," by, for example, "proving that a retaliatory motive played a part in the

adverse employment actions." *Id.* (quotation marks and citations omitted).

"To succeed on a retaliation claim after a defendant has established a legitimate, non-

discriminatory reason for the adverse action, the plaintiff must present evidence that retaliation

was the 'but-for' cause of the action." *Stewart*, 2023 WL 6970127, at *2; *see Carr v. N.Y.C.

*Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023) ("[T]he plaintiff must prove that the desire to

retaliate was the but-for cause of the challenged employment action." (quoting *Chen v. City Univ.*

*of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015))).

Even assuming Plaintiff fulfilled his initial burden to show retaliation, the claim fails

because, as discussed above, Defendants have established legitimate, non-discriminatory reasons

for the adverse employment actions taken against Plaintiff.  Given this, the burden shifts back to

Plaintiff to present evidence that "retaliation was the 'but-for' cause of the action," *Stewart*, 2023

WL 6970127, at *2, and he has not done so.  To prove "but-for" causation, there must be proof

not that "retaliation was the only cause of the employer's action, but only that the adverse action

would not have occurred in the absence of the retaliatory motive."  *Kwan v. Andalex Grp., LLC*,

737 F.3d 834, 846 (2d Cir. 2013).  Here, no reasonable juror could find that "the adverse action

would not have occurred in the absence of the retaliatory motive."  *Id*.; *cf. id.* (explaining that

contradictions and inconsistencies in an employer's proffered legitimate, nonretaliatory reasons

for its actions may lead to a reasonable juror concluding that the explanations were a pretext for a

prohibited reason).  Defendants presented unrebutted evidence that Banks slept on the job, was

not where he needed to be during his working hours, and was involved in a near-physical

altercation with a co-worker he called a "diabetic pussy" immediately before he was suspended

and ultimately terminated.[8]  Therefore, the Court grants summary judgment to Defendants as to

Banks's claim for retaliation under Section 1981.

## IV.  Plaintiff's Remaining Claims

Having granted summary judgment to Defendants on Plaintiff's federal law claims, the

Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims.  *See* 28

U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a

claim if . . . the district court has dismissed all claims over which it has original jurisdiction.").

As the Second Circuit has observed, "in the usual case in which all federal-law claims are

eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to

exercise jurisdiction over the remaining state-law claims."  *Valencia ex rel. Franco v. Lee*, 316

F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988)); *see Dhar v. N.Y.C. Dep't of Transp.*, 630 F. App'x 14, 16 (2d Cir. 2015) (summary

order) (holding that the "district court did not abuse its discretion when it declined to exercise

supplemental jurisdiction over [the plaintiff's] NYCHRL claim" after granting summary

judgment in favor of the defendants and dismissing the plaintiff's federal-law claims).  The Court

declines to exercise supplemental jurisdiction over Plaintiff's remaining claims, thus avoiding

deciding issues of state law that are better suited for the state courts of New York.  Accordingly,

Plaintiff's remaining state and city claims are dismissed without prejudice.

---

[8] Plaintiff alleges in his Rule 56.1 Statement that "Mr. Banks was not fired for purported reasons that Defendants asserted in their Answer to the Initial Complaint."  Banks's 56.1 Statement ¶ 98.  However, the record citations provided by Plaintiff do not support that proposition.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED as to Plaintiff's Section 1981 claims and Plaintiff's motion is therefore DENIED.  Because the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims, they are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 386 of the Lead Case, terminate the motion pending at ECF No. 121 of the Member Case, and to CLOSE the consolidated cases.

Dated: February 20, 2024
       New York, New York

SO ORDERED.

_Jennifer Rochon_
JENNIFER L. ROCHON
United States District Judge